UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MUTUAL OF OMAHA INSURANCE CO.,

        Plaintiff,

   v.                                                    Case No. 05-C-0079

BESSE FOREST PRODUCTS GROUP CO.,
WISCONSIN VENEER AND PLYWOOD, INC.,
WISCONSIN VENEER AND PLYWOOD, INC.
UNION EMPLOYEES MEDICAL PLAN,
BESSE FOREST PRODUCTS GROUP
MEDICAL PLAN and
BIRDS EYE VENEER CO.,

        Defendants.

and

BESSE FOREST PRODUCTS GROUP and
BESSE FOREST PRODUCTS GROUP
MEDICAL PLAN,

        Third-Party Plaintiffs,

   v.

SIRIUS AMERICA INSURANCE CO.,

        Third-Party Defendant.

---

**DECISION AND ORDER**

---

On September 27, 2003, Justin Greenwood, then a student at the University of Wisconsin-Eau Claire, was seriously injured while playing in an intercollegiate football game sponsored by the University. As a result of his injuries, Justin incurred medical expenses in excess of $600,000. This

case arises out of a dispute between an ERISA plan and an insurance company over which is primarily liable for Justin's medical expenses.

At the time of the accident, Justin was a covered dependant under the Besse Forest Products Group Medical Plan (the "Besse Plan"), a self-funded employee welfare benefit plan instituted by his father's employer. Sirius America issued a stop-loss insurance policy under which it agreed to reimburse the Besse Plan for claims over $75,000. Justin was also insured under an accident policy issued by Mutual of Omaha Insurance Company ("Omaha") to the National Collegiate Athletic Association (NCAA). As of August 12, 2005, the Besse Plan had paid $187,652.02 of Justin's expenses and Omaha had paid $218,824.92, leaving an unpaid balance of $229,843.57. (PPFOF ¶¶ 34-35.)

Omaha commenced this action, seeking a determination that the liability of the Besse Plan was primary and claiming that it was entitled to reimbursement from the Besse Plan for the expenses it already paid. The Besse Plan and Sirius (collectively, the "Besse Defendants") claim that Omaha is liable and seek reimbursement for their payments. Jurisdiction exists under both 28 U.S.C. §§ 1331 and 1332, and the case is now before me on cross-motions for summary judgment. For the following reasons, both motions will be granted in part and denied in part.

**A. The Besse Plan**

Timothy Greenwood, Justin's father, was at all relevant times an employee of Birds Eye Veneer, an affiliate of Besse. Timothy was a participant in the Besse Plan, a self-funded and self-administered ERISA plan that provides comprehensive medical care benefits to Besse employees

and their dependents. Justin was a dependent of Timothy and was entitled to medical benefits on that basis. (DPFOF ¶ 9.)

Exclusion 38 of the Besse Plan excludes coverage for "charges which are reimbursable through medical insurance provided by or available through . . . any medical insurance policy issued to a student by or through a school or university or college." (Ex. 1 at 49.) The Besse Plan also contains a section entitled "COORDINATION OF BENEFITS." It sets forth a series of rules for determining how benefits are to be paid in the event coverage exists under plans or insurance other than the Besse Plan. The Besse Plan defines "Plan," for purposes of its Coordination of Benefits section, to include "student accident insurance provided through or by an educational institution." (*Id.* at 51.) The Besse Plan also states that "the Plan Administrator [Besse] shall determine all questions arising in the administration, interpretation and application of the Plan" and that

> [a]ny interpretation, determination, rule, regulation, or similar action or decision issued by the Plan Administrator, or any person acting at its direction, shall be conclusive and binding on all persons, except as otherwise provided herein with any such determination, rule, regulation or similar decision not being set aside by a reviewing tribunal unless it is determined by a court of competent jurisdiction that the Plan Administrator acted in an arbitrary and capricious manner.

(*Id.* at 66.) The Besse Plan provides maximum medical benefits of $2.5 million per person, not to exceed $1 million per year.[1] (*Id.* at 11.)

**B. The Omaha Policy**

Effective August 1, 2003, Mutual of Omaha issued Policy No. SB04CC-3398 (the "Omaha Policy") to the National Collegiate Athletic Association ("NCAA"). The Omaha Policy provides

---

[1] The Besse Plan has a complicated system of deductibles and co-payments (Ex. 1 at 7-11) not relevant to the matters discussed in this Decision and Order.

3

coverage for medical expenses incurred by an "Insured Person" as a result of an accident occurring while that person was participating in an intercollegiate sport at a "Participating School." (Ex. 4 at 13.) The policy defined "Insured Person" as "a Student attending the Participating School and participating as . . . a player on an athletic team in a Qualifying Intercollegiate Sport sanctioned and recognized by the Participating School." (*Id.* at 9.) "Participating School" means "a college or university, which is an active member of the NCAA." (*Id.* at 10.) UW-Eau Claire is an active member of the NCAA. (DPFOF ¶ 11.)

The Omaha Policy contains the following language under the heading "OTHER INSURANCE – EXCESS NATURE OF POLICY":

> Except as provided below, this Policy is excess over any Other Insurance or similar benefit program available to the Insured Person for a covered Loss under this Policy. If an Insured Person receives or is eligible to receive benefits or services from any Other Insurance or similar benefit program for any benefit category of a Covered Loss for which he or she is eligible under this Policy, such benefit under this Policy will be reduced by the amount of such Other Insurance or similar benefit program.
>
> . . .
>
> "Other Insurance" means any reimbursement for or recovery of any element of Covered Loss available from any other source whatsoever, except gifts and donations, including without limitation . . . any individual, group, blanket or franchise policy of accident, disability or health insurance.

The Omaha Policy provides coverage of up to $20 million per covered accident with a $65,000 deductible.

**ANALYSIS**

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wantz v.*

4

*Experian Information Sol.*, 386 F.3d 829, 832 (7th Cir. 2004); Fed. R. Civ. P. 56. Summary judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771-72 (7th Cir. 2000). This case involves both an ERISA plan and a conventional insurance policy, though the parties' dispute primarily concerns the interpretation of the former. In interpreting an ERISA plan, this court applies federal common law rules of contract interpretation. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). These rules "require [the court] to interpret terms of ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540-41 (7th Cir. 1996). In attempting to interpret an ERISA plan, the court's "first task is to determine if the [documents governing the ERISA plan] at issue [are] ambiguous or unambiguous." *Neuma*, 259 F.3d at 873. "[I]f a document governing an ERISA plan is unambiguous, this court will not look beyond its 'four corners' in interpreting its meaning." *Id.*

The Besse Defendants argue that Exclusion 38 excludes any coverage for Justin's expenses under the Besse Plan. Exclusion 38 of the Besse Plan excludes coverage for "charges which are reimbursable through medical insurance provided by or available through . . . any medical insurance policy issued to a student by or through a school or university or college." (Ex. 1 at 49.) The Besse Defendants contend that the Omaha Policy is a "medical insurance policy issued to a student by or through a school or university or college." Moreover, noting that the Besse Plan makes determinations by the plan administrator discretionary, the Besse Defendants argue their interpretation controls unless it is shown to be arbitrary and capricious.

While an administrator of an ERISA plan containing discretionary language has discretion to interpret the terms of its plan vis-a-vis its own insureds, so long as its interpretation is not

5

arbitrary or capricious, *see Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir. 1998), determining coordination of benefits between the Besse Plan and the Omaha Policy involves the interpretation of both. The Besse Plan cannot grant Besse discretion to interpret the Omaha Policy. *See Trs. of the Southern Ill. Carpenters Welfare Fund v. RFMS, Inc.*, 401 F.3d 846, 850 (7th Cir. 2005) ("[T]he Trustees contend that their own coordination-of-benefits provision is entitled to judicial deference as it is neither arbitrary nor capricious. . . . While Trustees may interpret *their own* plan so long as that interpretation is neither arbitrary nor capricious, the Trustees' coordination-of-benefits argument requires, and directly relies on, the Trustees' interpretation of the RFMS plan. It is for us, and not the Trustees, to interpret that plan in relation to the Carpenters plan.) (emphasis in original). Accordingly, the court rejects the Besse Defendants' argument that Besse's interpretation of how the Besse Plan's benefits coordinate with the Omaha Policy's benefits is entitled to deference. But even if the court's review was more deferential, the result would be the same.

Leaving aside for now the issue of whether the Omaha Policy was "issued to a student by or through a school or university or college," the court concludes that the insurance issued by Omaha was not a medical insurance policy. The Besse Defendants' argument to the contrary conflates medical insurance with accident insurance. "[M]edical insurance is an undertaking to indemnify another for losses occasioned by sickness and disease. Unlike accident insurance, sick benefit or health insurance applies, in the absence of some exclusionary or limitation clause, to risks which are the natural result of disease arising from a pathological condition." Couch on Insurance § 144:1 (3d ed.). Medical insurance covers the medical expenses of the insured whether incurred because of sickness or accident. An accident policy, on the other hand, pays for losses caused by

6

an accident, including the resulting medical expenses, disability, or even death. The Omaha Policy is accident insurance and not medical insurance.

Further support for this interpretation is found in the Coordination of Benefits section of the Besse Plan where the primary dispute between the parties arises. Coordination of benefits provisions are intended to determine which plan pays benefits when there are two or more plans providing coverage to an individual. Such provisions have become increasingly common in group health care plans because of the growing number of families with both spouses employed and eligible for coverage under separate employee benefit plans. "By conditioning coverage on specified circumstances, the clauses seek to limit their costs and prevent a claimant from acquiring coverage from multiple plans in excess of the claimant's covered medical expenses." *McGurl v. Trucking Employees Welfare Fund*, 124 F.3d 471, 474 (3rd Cir. 1997) (*citing* Jack B. Helitzer, *Coordination of Benefits: How and Why it Works*, 4 Benefits L.J. 411, 412 (1991)).

The Besse Plan sets forth several rules that are intended to establish which plan pays benefits when more than one plan provides coverage. Before the rules can be applied, however, it is first necessary to determine whether coverage exists under another plan. For purposes of its Coordination of Benefits section, the Besse Plan defines "Plan" to include "student accident insurance provided through or by an educational institution." (Ex. 1 at 51.) Obviously, if the existence of accident insurance was intended to result in the exclusion of coverage under Exclusion 38 of the Besse Plan, there would be no reason to coordinate such benefits with those available under the Besse Plan. The fact that the Besse Plan includes student accident insurance within the definition of another "Plan" in its Coordination of Benefits section demonstrates that accident

7

insurance is different from student medical insurance. It follows that Exclusion 38 does not apply to accident insurance and thus coverage is afforded under the Besse Plan.

Turning then to the coordination of benefits provision of the Besse Plan, Omaha first argues that, notwithstanding the fact that it provided accident insurance, its policy does not constitute a "Plan" for purposes of the Besse Plan because the accident policy it issued was not "provided through or by and educational institution." Omaha points out that it issued the Omaha Policy not to UW-Eau Claire, but to the NCAA. Neither Mutual of Omaha, nor the NCAA, is an educational institution, and thus, Omaha contends, its policy cannot be considered a "Plan" within the meaning of the Besse Plan's Coordination of Benefits provision.

The court disagrees. Justin qualified as an "Insured Person" under the Omaha Policy only because he was attending UW-Eau Claire–a member of the NCAA–at the time of the injury. UW-Eau Claire was the means through which Justin qualified for coverage under the Omaha Policy. As such, the Omaha Policy may fairly be characterized as "student accident insurance provided through . . . an educational institution." *Cf.* Merriam Webster's Collegiate Dictionary 1230 (10th ed. 1999) (defining "through" as "a function word to indicate means, agency, or intermediacy"). Furthermore, the Besse Plan also includes within the definition of "Plan," for purposes of coordinating benefits, a plan providing medical or dental benefits or services by "group, blanket, or franchise insurance coverage." (Ex. 1 at 51.) Mutual of Omaha's policy clearly provided "group" or "blanket" insurance coverage for student athletes accidentally injured in NCAA sponsored events. The Omaha Policy thus qualifies as a "Plan" under the Besse Plan's Coordination of Benefits provisions, and the court now turns to those rules to determine the priority of payment provided for under that Plan.

8

The first rule for determining the order of benefits under the Besse Plan reads: "If the other Plan does not have Coordination of Benefits, that Plan pays first." (Ex. 1 at 52.) This rule does not apply. The Omaha Policy is clearly intended to serve as an excess policy. By its terms, it seeks to coordinate benefits by providing that its obligation to pay only arises after any other insurance that may apply has been exhausted. Since both the Besse Plan and the Omaha Policy seek to coordinate benefits, the first rule does not determine priority.

Rule two states:

> The benefits of a Plan which covers the person as an employee, member, or subscriber (other than as a dependent) are determined before the benefits of a Plan which covers the person as a dependent.

(*Id.* at 52.) The Besse Plan covers Justin only as a dependent. The Omaha Policy, on the other hand, covers him as an insured person. (Ex. 4 at 9.) In other words, the Omaha Policy covers Justin "other than as a dependent." It therefore follows that under rule two of the Besse Plan's Coordination of Benefits section, the Omaha Policy is primary with respect to medical expenses in excess of Mutual's $65,000 deductible.

This means that the priority called for under the Besse Plan is directly contrary to that called for by the Omaha Policy. Whereas the Omaha Policy is intended to provide only excess coverage once other applicable insurance is exhausted, the Coordination of Benefits rules under the Besse Plan dictate that the coverage provided under the Omaha Policy is primary. The court can only conclude that the Besse Plan and the Omaha Policy contain mutually repugnant provisions. The Seventh Circuit provided instruction on how to proceed under those circumstances in *Winstead v. Indiana Ins. Co.*, 855 F.2d 430 (7th Cir. 1988). The injured party in *Winstead* had coverage under both an ERISA health plan and a no-fault automobile insurance policy. Both the plan and the policy

9

contained provisions making the other's coverage primary. The court held that the provisions were mutually repugnant and, applying federal common law, held that liability should be apportioned between the plan and the policy on a *pro rata* basis.

The Besse Defendants object to a *pro rata* sharing of liability and urge the court instead to follow the approach of the Sixth Circuit in *Auto Owners Insurance v. Thorn Apple Valley, Inc.*, 31 F.3d 371 (6th Cir. 1994). In *Auto Owners*, the Sixth Circuit held that when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its coordination of benefits clause, must be given full effect in order to further the important policies underlying ERISA. Giving full effect to the ERISA plan's coordination of benefits provisions furthers the underlying purpose of ERISA, the court held, by protecting the interests of participants in employee benefit plans and their beneficiaries. 31 F.3d at 375. The Besse Defendants also note that ordering both plans to pay benefits on a *pro rata* basis can result in uncertainty and confusion because of the different coverages, deductibles, co-pays, and preferred providers each plan may offer. *See Johnson v. Chicago Plastering Institute Health and Welfare Fund*, 341 F. Supp.2d 1011, 1018-19 (N.D. Ill. 2004). For this reason, and in order to promote uniformity and predictability in coordinating benefits under multiple plans and insurance policies, other circuits and most states have adopted rules like the "employer-first" rule recommended by the National Association of Insurance Commissioners (NAIC). *Id.; see also McGurl v. Trucking Employees of North Jersey Welfare Fund*, 124 F.3d 471, 483-86 (3rd Cir. 1997). Noting that the Besse Plan's coordination of benefits provision mirrors the NAIC's model regulation, including the "employee-first" rule, the Besse Defendants urge the court to apply its provision and find the Omaha Policy primarily liable.

10

Although the argument advanced by the Besse Defendants is not without merit, this court is bound by the law of this circuit. *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("A district court in Wisconsin must follow our decisions, but it owes no more than respectful consideration to the views of other circuits."). In this court's view, the Seventh Circuit's decision in *Winstead* is dispositive of the issue before it. In *Winstead*, as in this case, the court was confronted with an ERISA plan and an insurance policy containing mutually repugnant coordination of benefit clauses. Under those circumstances, the Seventh Circuit held that the contested liability must be apportioned *pro rata*. 855 F.2d at 435. *Pro rata* apportionment of liability must occur in this case as well.

## CONCLUSION

For the foregoing reasons, plaintiff's and defendants' motions are both **GRANTED** to the extent that the court declares that Mutual of Omaha and the Besse Plan are each liable only for a *pro rata* share of Justin Greenwood's medical expenses incurred as a result of his September 27, 2003, accident. Both motions are otherwise **DENIED.**

The clerk of court shall set this matter on for a hearing concerning apportionment of liability within thirty days.

**SO ORDERED.**

Dated this   26th   day of May, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
